[613 NYS2d 634]

In the Matter of WILLIAM F. WEIDLICH, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 23, 1994

### APPEARANCES OF COUNSEL

*Jeremy S. Garber* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance on behalf of respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, William F. Weidlich, was admitted to the practice of law in New York by the First Judicial Department on

June 28, 1965. Respondent was also admitted to the practice of law in the State of Connecticut on April 29, 1964.

By petition dated January 21, 1994, the Departmental Disciplinary Committee is seeking an order pursuant to 22 NYCRR 603.3 suspending respondent from the practice of law for three years predicated upon the fact that he was similarly disciplined by the Superior Court of the State of Connecticut, Judicial District of Hartford/New Britain on October 19, 1993.

A complaint was filed against respondent by Teresa O'Neil, the executrix of an estate, who had retained respondent to assist her in her capacity as executrix, alleging that respondent signed her name, without her knowledge or consent, to a number of checks payable to himself on an estate checking account.

A duly appointed Reviewing Committee of the Connecticut Statewide Grievance Committee conducted a hearing at the Connecticut Superior Court on December 4, 1991. Respondent appeared and gave testimony at the hearing. Thereafter, the Reviewing Committee drafted a proposed decision which was adopted by the Statewide Grievance Committee on February 20, 1992. Respondent testified that $11,700 of the $11,750 in checks he wrote to himself represented legal fees to which he claimed he was entitled. The Reviewing Committee did not accept respondent's defense and concluded that there was clear and convincing evidence that respondent had committed professional misconduct, therefore warranting a presentment to the Superior Court.

The Connecticut Statewide Grievance Committee then presented to the Connecticut Superior Court a formal complaint against respondent entitled Presentment of Attorney for Misconduct. The Presentment was filed with the Connecticut Superior Court on June 29, 1993.

On June 29, 1993, Judge Arnold W. Aronson of the Connecticut Superior Court signed an order for hearing and notice and summons calling for notice of an August 6, 1993 hearing to be given to respondent's attorney and agent for service, J. Paul Johnson, Esq.

On August 27, 1993, a stipulation of facts, disposition and appointment of trustee was signed by Assistant Bar Counsel of the Connecticut Statewide Grievance Committee and respondent's counsel. In the stipulation respondent admitted to serious misconduct and consented to a three-year suspension from the practice of law.

Specifically, respondent admitted that he was retained by the complainant, Ms. Teresa O'Neil, in or about December of 1985, to assist and advise her in the performance of her duties as executrix of the estate of Mary O'Haggen. Respondent received regular payments for legal services rendered to the estate in 1986 and 1987 but failed to settle the estate. Beginning in or about May 10, 1989 and continuing through August 17, 1989, respondent signed O'Neil's name, without her knowledge or authorization, to five checks drawn on the estate's checking account and payable to respondent. The total amount of the checks was $11,750 and all were deposited into respondent's own personal or business account by January 1990.

In April 1991, O'Neil discharged respondent and hired John L. Vecchiolla, Esq. to assist and advise her in performance of her duties as executrix. Between May 6, 1991 and May 24, 1991 respondent turned over to O'Neil $52,087.35 in estate funds, leaving a deficiency of $6,349.43 in the estate administration account. The parties later adjusted the amount owed by respondent towards the deficiency from $6,349.43 to $4,949.43. Between April 8, 1992 and April 22, 1992 respondent paid $4,849.43 toward the deficiency. Respondent admitted that the deficiency was over and apart from the $11,750 in checks he had forged in 1989.

In June 1992, O'Neil brought suit on behalf of the estate against the Union Trust Company for paying out $11,750 on forged checks. The suit was settled in December 1992 with the estate recovering one half the loss, or $5,875, from the Union Trust Company. The estate then recovered the other half of the loss, $5,875, from respondent in January and February 1993.

Respondent further admitted in the stipulation that he failed to fully comply with a December 1991 subpoena of the Connecticut Statewide Grievance Committee directing him to appear with all records pertaining to the estate.

Following the signing of the stipulation, a hearing was held at the Connecticut Superior Court in Hartford, Connecticut, on August 27, 1993 before State Trial Referee Robert Satter. At the hearing, respondent acknowledged that he had read the stipulation and agreed with it.

On October 19, 1993, the Connecticut Superior Court issued an order suspending respondent from the practice of law for a period of three years and appointing a trustee to inventory

respondent's files and take such action as seems indicated to protect the interests of his clients. Respondent was also directed to make restitution to the Union Trust Company in the amount of $5,875.

The Departmental Disciplinary Committee is now seeking an order suspending respondent from the practice of law in New York for a period of three years based upon the three-year suspension imposed in Connecticut. The Committee asserts that the misconduct for which respondent was disciplined in Connecticut constitutes misconduct in New York.

Respondent was personally served with a copy of the Committee's petition on January 27, 1994. To date respondent has not interposed a response.

22 NYCRR 603.3 (a) provides: "Any attorney to whom this Part shall apply, pursuant to section 603.1 of this Part who has been disciplined in a foreign jurisdiction, may be disciplined by this court because of the conduct which gave rise to the discipline imposed in the foreign jurisdiction. For purposes of this Part, foreign jurisdiction means another state, territory or district."

By stipulation, respondent admitted that he violated rule 1.3 of the Connecticut Rules of Professional Conduct by failing to timely settle the estate. Rule 1.3 of the Rules of Professional Conduct states: "A lawyer shall act with reasonable diligence and promptness in representing a client". This is analogous to DR 6-101 (A) (3) of the New York Code of Professional Responsibility which states: "A lawyer shall not * * * [n]eglect a legal matter entrusted to the lawyer".

Respondent further admitted he violated rule 1.15 of the Rules of Professional Conduct by failing to adequately safeguard estate funds. Rule 1.15 provides in pertinent part as follows: "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for such period of time as may be required under applicable law after termination of the representation."

This is analogous to DR 9-102 (A) of the Code of Professional Responsibility which states:

"A. Prohibition against commingling.

"A lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not commingle such property with his or her own."

Respondent admitted he violated rule 8.1 (b) of the Rules of Professional Conduct by failing to fully comply with a subpoena of the State-wide Grievance Committee directing him to bring all his records pertaining to the estate to the grievance hearing. Rule 8.1 states, in pertinent part:

"An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not * * *

"(b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

In New York, failure to cooperate with a disciplinary or grievance committee is deemed to be conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5) of the Code of Professional Responsibility. *(See, Matter of Coughlin,* 95 AD2d 64 [1st Dept 1983].)

Finally, respondent admitted he engaged in conduct involving dishonesty, in violation of rule 8.4 (c) of the Rules of Professional Conduct, by issuing five checks to himself totalling $11,750 and signing O'Neil's name to those checks without her knowledge or authorization. Rule 8.4 (c) states: "It is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." In New York, such conduct would be deemed a violation of DR 1-102 (A) (4) of the Code of Professional Responsibility which also prohibits lawyers from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. *(See, Matter of Marks,* 72 AD2d 399 [1st Dept 1980] [attorney who misappropriated and converted funds from a deceased client's estate by forging the administratrix's signature to a number of checks was found, *inter alia,* to be in violation of DR 1-102 (A) (4) of the Code of Professional Responsibility].)

With respect to sanction, in reciprocal disciplinary cases, such as this, it is generally accepted that the State where respondent lived and practiced law at the time of the offense

has the greatest interest in the issue and the public policy considerations relevant to such disciplinary actions. *(See, Matter of Reiss,* 119 AD2d 1 [1st Dept 1986].)

The Connecticut Superior Court imposed a three-year suspension upon respondent. In mitigation of the most serious charge of misconduct, respondent claimed that $11,700 of the $11,750 in checks he wrote to himself represented legal fees to which he claimed he was entitled. Thus, it appears that respondent's case would be analogous to those cases in New York where it has been concluded that a "technical conversion" was involved, thus warranting the imposition of a sanction less severe than disbarment. *(See, Matter of Pelsinger,* 190 AD2d 158 [1st Dept 1993]; *Matter of Altomerianos,* 160 AD2d 96 [1st Dept 1990]; *Matter of Altschuler,* 139 AD2d 311 [1st Dept 1988].)

Accordingly, the Committee's petition should be granted and respondent should be suspended from the practice of law in New York for a period of three years pursuant to 22 NYCRR 603.3 predicated upon the fact that he was similarly disciplined by the Connecticut Superior Court on October 19, 1993 and that said suspension shall be coterminous with the suspension in Connecticut.

ROSENBERGER, J. P., ROSS, RUBIN, WILLIAMS and TOM, JJ., concur.

Application granted and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of three years, effective July 25, 1994, predicated upon the fact that he was similarly disciplined by the Connecticut Superior Court on October 19, 1993, and said suspension shall be coterminous with the suspension in Connecticut, all as indicated in the order of this Court.